IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
ALLENTOWN DIVISION

| | | |
|---|---|---|
| James Andrew Blatt | : | Civil Action No: |
| Plaintiff | | |
| vs. | : | 18 U.S.C. § 1964(c) Civil RICO |
| Google Inc., | : | 18 U.S.C. § 2707 |
| AOL Inc., | : | 18 U.S.C. §1595 |
| Unknown named agents of Google Inc., | : | |
| Unknown named agents of AOL Inc., | | Action at Law |
| Lawrence Page, | : | |
| Sergey M. Brin, Defendants, | : | JURY TRIAL DEMANDED FOR ANY ISSUES SO TRIABLE |

## COMPLAINT'S TABLE OF CONTENTS

**PAGE**

**I Parties** ....................................................2
**II Jurisdiction**....................................................3
**III The Racketeering Scheme**....................................................3

10.) Preliminary Statement: The RICO Targeting and Background....................................................3

11.) 18 U.S.C. § 1343 Wire Fraud as Google Inc.'s Predicate Act of Racketeering Activity............4

12.) 18 U.S.C. § 1952(a) Interstate and foreign travel or transportation in aid of racketeering enterprises as a Predicate Act of Racketeering Activity....................................................5

13.) Act of Extortion, 18 U.S.C. § 1343 Wire fraud Predicate, and 18 U.S.C. § 1512 Tampering with a victim, witness or an informant as Predicate Acts of Racketeering Activity Targeting Plaintiff....................................................7

14.) The Google-AOL Enterprise with 13th Amendment Violations and 18 U.S.C. § 1343 Wire fraud as Predicate Acts of Racketeering Activity....................................................9

15.) 18 U.S.C. § 1512 Tampering with a witness, victim or an informant and 18 U.S.C. § 1343 Wire fraud as Predicate Acts of Racketeering Activity....................................................11

16.) 18 U.S.C. § 1513 Retaliation against a victim, witness or an informant and 18 U.S.C. § 1343 Wire fraud as Predicate Acts of Racketeering Activity ....................................................15

17.) Conclusion: Conduct Constituting a Pattern of Racketeering Activity....................................................17

**IV Supplemental State Law Claims.....17**

18.) 18 Pa.C.S. §5725 Civil action for unlawful interception, disclosure or use of wire, electronic or oral communication.....17

19.) Common Law Fraud / Tort of Non-Disclosure.....20

20.) Tortious Interference.....20

21.) Harassment.....21

22.) Conversion.....21

23.) Negligence In The Provision of Wire and Electronic Communications.....22

24.) Supervisory Negligence In The Provision of Wire and Electronic Communications..... 22

25.) Mental Anguish and Emotional Distress / Pain and Suffering / Intentional Infliction of Emotional Distress.....23

**V Federal Claims For Relief.....23**

26.) 18 U.S.C. § 1964 (c) Civil RICO.....23

27.) 18 U.S.C. § 2707 Civil Action (Unauthorized Access to Transactional Records).....24

28.) 18 U.S.C. §1595 Civil remedy (provision of the 13th Amendment).....24

**VI Conclusion.....24**

**VII Prayer for Relief.....25**

## COMPLAINT

## I Parties

**1.)** Plaintiff **James Andrew Blatt** is a Pennsylvania resident with a current mailing address at 630 Hertzog Ave., Bethlehem, PA 18015.

**2.)** Defendant **Google Inc.** is a Delaware corporation with its principal place of business located at the Googleplex, 1600 Amphitheatre PKWY, Mountain View, CA 94043. **Google Inc.** maintains a Pennsylvania base of operations located at 6425 Penn Avenue #700, Pittsburgh, PA 15206.

**3.)** Defendant **unknown named agents of Google Inc.** are employees of defendant Google Inc. and are one and the same as their employer pursuant to 47 U.S.C. § 217 Agents' acts and omissions; liability of carrier.

**4.)** Defendant **AOL Inc.** is a New York corporation with its principal place of business located at AOL Headquarters, 770 Broadway, New York, NY 10003.

**5.)** Defendant **unknown named agents of AOL Inc.** are employees of defendant AOL Inc. and are one and the same as their employer pursuant to 47 U.S.C. § 217 Agents' acts and omissions; liability of carrier.

**6.)** Defendant **Lawrence Page** is Google Inc.'s Chief Executive Officer and co-founder and is an individually named agent of Google Inc. who's responsible for supervisory oversight of Google Inc..

**7.)** Defendant **Sergey M. Brin** is a co-founder of Google Inc. and an individually named agent of Google Inc. who's responsible for supervisory oversight of Google Inc.

## II Jurisdiction

**8.)** All parties to this matter are physically situated and able to be located as stated above at (1), (2) and (4) and the relevant facts alleged herein substantially occurred inside of Lehigh County, PA in wire, electronic or mail interactions between plaintiff and defendants giving jurisdiction and venue to this Honorable Court.

**9.)** This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because plaintiff alleges violations of federal law, namely the federal civil Racketeering Influenced and Corrupt Organizations Act, the Stored Wire and Electronic Communications and Transactional Records Civil Action provisions and the civil remedy of the 13th Amendment. The Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

## III The Racketeering Scheme

### 10.) Preliminary Statement: The RICO Targeting and Background

A.) Plaintiff's Google Mail (hereafter "Gmail") alias, blattimwald@gmail.com translated from German means "leaf in the forest" and when plaintiff lived in Germany (in the 2005 – 2006 academic year) plaintiff lived on ZweigStraße which translated from German means "Branch Street". Taken together plaintiff was "Leaf in the Forest, Living on Branch", and therefore plaintiff was purposefully targeted to not be noticed by anyone but defendants at their scheme's inception occurring sometime in 2005.

This constitutes the original reason or purpose of unknown named agents of Google Inc. for targeting plaintiff for a near decade of racketeering activity predicated continuously on 18 U.S.C. § 1343 Fraud by wire, radio, or television. The second predicate act is dependent on the temporality of the scheme and all predicate acts of racketeering activity are fully set-forth later herein and a pattern of racketeering activity is demonstrated.

B.) Plaintiff's business interests as a writer have been seriously injured by unknown named agents of Google Inc. knowingly and willfully deleting plaintiff's protected property right: literary works contained in his e-mails, remotely from at the carrier. 18 U.S.C. § 1964 (c) gives plaintiff standing to bring the instant action. Defendant's theft of plaintiff's intellectual property began sometime in 2005. The value of plaintiff's copyrighted literary works has a reducible value and constitutes a protected property right. Plaintiff's literary works attached to, and miscellaneous fixed forms of expression contained within, e-mails stored in ordinarily accessible folders were deleted as wire communication by defendant Google Inc.'s Agents' use of its own interstate communications facilities as part of their service utilization of plaintiff's Gmail account.

C.) 18 U.S.C. § 1964 (c) remedial treble damage includes the cost of plaintiff's laptop computer, the actual cost of plaintiff's cellular telephones, the actual cost to replicate photographs from overseas (taken during plaintiff's youth) and extorted from plaintiff incidental to defendant's

racketeering scheme. These injuries are hereinafter specifically alleged as direct and proximate results of defendant's racketeering scheme.

D.) At all times relevant to this complaint Google Inc. ("Google") defendant's and unknown named agents of AOL Inc. were acting within the course and scope of their employment for their common carrier employer to enable their scheme, and 47 U.S.C. § 217 Agents' acts and omissions; liability of carrier is applicable to their individual actions. The theory of liability known as respondeat superior also applies to the individually named defendant's actions.

E.) Plaintiff noticed his actual loss on or about March 15, 2011.

F.) Sometime back in 2003-'04 plaintiff signed up for Gmail and used the account blattimwald@gmail.com, among other things, to store his literary works in ordinarily accessible folders in the cloud with Google Inc.. The loss of plaintiff's copyrighted literary works, a protected property right for RICO purposes, appears to plaintiff the most difficult intangible to value. Plaintiff was non-disclosed from his own e-mail inbox, *that is,* e-mails were deleted by unknown named Google agents remotely while they were in wire storage as transactional records and later e-mails were deleted before they were ever listed as received in plaintiff's inbox. Some of these e-mails were simply saved or intended to be saved by plaintiff long-term in ordinarily accessible folders. Again the e-mails in this account were *not* deleted by plaintiff, the account holder, in the majority, throughout the existence of blattimwald@gmail.com inside of Google Inc. defendants' pattern of racketeering activity.

These deletions of plaintiff's e-mail by the unknown named Google Inc. agents are an integral feature of the conduct constituting racketeering activity at the inception of The Racketeering Scheme. Defendants' scheme has its origins in the 2005 – 2006 American academic year timetable and this non-disclosure of plaintiff from his own e-mail accounts (at **blattimwald@gmail.com** and **stjab12@moravian.edu**) persisted thru on or about January 25, 2014. This "delete / non-disclose scheme" existed in clear defiance of Google Inc.'s duty to provide an honest service to plaintiff.

## 11.) 18 U.S.C. § 1343 Wire Fraud as Google Inc.'s Predicate Act of Racketeering Activity

A.) Plaintiff sent hundreds if not thousands of wire communications transmissions (also known as e-mails) from his stjab12@moravian.edu and blattimwald@gmail.com e-mail accounts between on or about January 1, 2009 and April 19, 2009 and on or about May 1, **2009** and February 17, **2011.** From on or about April 19, 2009 until on or about May 1, 2009 plaintiff was in a continuous condition of illegal servitude after he was admitted to a psychiatric hospital at 18 U.S.C. § 1589 Forced labor through abuse of the civil commitment process. These e-mails content (fixed in the majority of them as a single subject line per e-mail) was founded upon an actual 13th Amendment deprivation.

C.) Plaintiff was non-disclosed from his own erratic and idiosyncratic online communications activities which constituted criminal activity and civil law harassment as part of Google's wire fraud predicate (at 18 U.S.C. §1343). Unknown named agents of Google committed the negligent acts of deleting plaintiff's e-mails in his stjab12@moravian.edu as if they were plaintiff (the account holder) which furthered plaintiff being victimized by Moravian actors, as they left plaintiff unaware of the enormity of quantity and impact of his writings which did not appear coherently anywhere and which allegedly posed a threat to the local college community. Plaintiff allegedly

made bomb threats and threatened to commence a war and was never able to review same due to defendant's deletions.

Defendant's deletions of plaintiff's e-mails from remotely at the carrier non-disclosed plaintiff from truth; the true frame of mind of the unknown named agents of Google Inc. while illegally intercepting plaintiff's enormous quantity of e-mail was "[plaintiff's] provoking a search. Let's let him do it" which search, on account of plaintiff's enormous quantity of e-mails and their content, in fact happened resulting in plaintiff's forced labor violation.

Defendant unknown named agents of Google Inc. illegally intercepted plaintiff's wire and electronic communications which in vast majority questioned Moravian and informed against Moravian's status as a racketeering enterprise in the public sphere, which informing started in January of 2009. Many were e-mailed to askdoj@usdoj.gov and a *litany of local litigators* out of stjab12@moravian.edu and blattimwald@gmail.com.

On or about April 19, 2009 plaintiff addressed an e-mail subject line "MY ROOM IS BEING SEARCHED RIGHT NOW" to a local attorney's office (recipient Joseph Welsh) which was transmitted from plaintiff's blattimwald@gmail.com account. It is alleged this e-mail was illegally intercepted as a wire communication.

Google Inc. defendant's deleted this, and most other electronically mailed communications from plaintiff's "sent" and "recently deleted" e-mail folders in both of the above enumerated e-mail accounts.

Defendant's acts constitute intentional and malicious, knowing and willful Wiretap law violations civil remedy at 18 Pa.C.S. § 5725 and 18 U.S.C. § 2707 (which claims for relief are set forth fully hereafter).

Google Inc. defendant's accessed plaintiff's Moravian e-mail account unlawfully as part of their scheme. These allegations of defendant's account access constitutes the beginnings of a course of conduct defined hereinafter as a violation of 18 U.S.C. § 1512 Tampering with a victim, witness, or an informant, due to the corrupt nature of defendant's deletions occurring as part of defendant's intentionally misleading conduct targeting plaintiff.

D.) Google Inc. defendant's interfered with and obstructed plaintiff's wire and electronic communications throughout their pattern of racketeering activity solely because they could and they did so with impunity which is shocking conduct from a transnational carrier's agents, warranting punitive damages.

**12.) 18 U.S.C. § 1952(a) Interstate and foreign travel or transportation in aid of racketeering enterprises as a Predicate Act of Racketeering Activity**

In the course of Google Inc. defendant's pattern of racketeering activity targeting plaintiff and existent from ca. 2005 to 2014: defendant's are in a **presently** open-ended in continuity pattern of racketeering activity. Google Inc.'s agents had actual knowledge of, and promoted and facilitated the carrying on of, unlawful activity in plaintiff's online world until on or about July 19, 2012. Google Inc.'s knowing facilitation of this unlawful

activity occurred outside of the normal scope of common carrier business, and as part of their knowing and willful malicious acts:.

Unknown named agents of Google Inc. used Google Inc.'s facility in interstate commerce with intent to facilitate the carrying on of unlawful activity, specifically:

A.) On or about Saturday, May 23, 2009 Airborne Express delivered a package from "Shama Medical" to plaintiff. This package was dispatched from Karachi, Pakistan to 630 Hertzog Ave, Bethlehem, PA *and communication for this transaction was Gmail to Gmail facilitated* (ca. shama.medical@gmail.com to/from blattimwald@gmail.com): communication was initiated by plaintiff on or about May 19, 2009 with Shama Medical. Plaintiff purchased methylphenidate, a schedule 2 controlled substance, which was delivered to him. This transaction occurred years after Google Inc. defendant's initial notice of plaintiff and months after the beginning of defendant's scheme to delete or non-disclose e-mails from plaintiff at blattimwald@gmail.com and stjab12@moravian.edu. This transaction was illegally intercepted and digitally racketeered by unknown named agents of Google Inc..

Shama Medical existed on Gmail prior to plaintiff having found this narcotics dealer in May of 2009 and operated with the actual knowledge and facilitation ("protection") of unknown named agents of Google Inc. until plaintiff reported Shama Medical directly on or about April 10, 2012 (alleged hereafter).

B.) On or about February 5, 2012 complainant used www.bulkresearchchemicals.com based in England to purchase advertised Ethylphenidate, a schedule 2 controlled substance analogue. All communication was directly linked to, and facilitated through, blattimwald@gmail.com, and this transaction was illegally intercepted and digitally racketeered, like to the above.

C.) On or about April 20, 2012 complainant used www.bulkresearchchemicals.com based in England to purchase advertised Ethylphenidate, a schedule 2 controlled substance analogue. All communication was directly linked to, and facilitated through, blattimwald@gmail.com, and this transaction was illegally intercepted and digitally racketeered, like to the above.

D.) On or about May 4, 2012 Complainant used www.sportsbook.ag to place an unlawful wager on Bodemeister in the 2012 Kentucky Derby. All communication was directly linked to, and facilitated through, blattimwald@gmail.com. The 2012 Kentucky Derby was run on May 5, 2012. This transaction was illegally intercepted and digitally racketeered.

E.) On or about May 18, 2012 Complainant used www.sportsbook.ag to place an unlawful wager on Bodemeister in the 2012 Preakness Stakes. All communication was directly linked to, and facilitated through, blattimwald@gmail.com. The 2012 Preakness Stakes was run on May 19, 2012. This transaction was illegally intercepted and digitally racketeered.

Plaintiff was engaged in the business of betting over the wire as well as trafficking in controlled substances (Exhibit "A") for personal ingestion which constitutes a self-inflicted physical injury of brain damage facilitated directly by the intentional acts of unknown named agents of Google Inc..

These transactions constitute 18 U.S.C. § 1952(a) Racketeering. Unknown named agents of Google Inc. perpetrated this crime in reckless and outrageous disregard of plaintiff's health, safety and

welfare as part of their racketeering scheme. The years of these transactions demonstrate continuity of defendant's racketeering activity targeting plaintiff as occurring over a substantial period of time, and these transactions occurred around periods of plaintiff's imprisonment. These transactions also occurred around other predicate acts of racketeering activity *as alleged* between 2009 and 2012.

**13.) Act of Extortion, 18 U.S.C. § 1343 Wire fraud Predicate, and 18 U.S.C. § 1512 Tampering with a victim, witness or an informant as Predicate Acts of Racketeering Activity Targeting Plaintiff**

A.) On or about March 15, 2011 plaintiff went looking for some writing he had been storing remotely in an ordinarily accessible folder in his blattimwald@gmail.com account. Plaintiff was looking for a treatise which was still in its outline but had a working title. Plaintiff noticed his writings had all vanished – been deleted remotely by unknown named agents of Google Inc.'s service utilization of his blattimwald@gmail.com account as part of Google Inc. defendant's delete scheme. This extortion of plaintiff's intellectual property has an actual value to be determined at trial. Defendant's delete scheme is shocking.

B.) Bewildered, on or about April 20, 2011 plaintiff sent an e-mail to himself from himself at blattimwald@gmail.com subject line "Was I Patriot Acted or is this Google". Plaintiff clicked "send", there was a delay, and this e-mail returned subject line altered to read "Google". Plaintiff wrote this e-mail due to sensing real-time monitoring by an unknown named agent of Google Inc. in his account on that day. The content of this wire communication was altered in transmission.

Plaintiff's copyright in his fixed forms of expression has real money value. E-mails deleted from plaintiff's stjab12@moravian.edu and blattimwald@gmail.com accounts had as attached plaintiff's high school and college writings which included "Google enters China" entitled "Good Google" as well as "Coca-Cola in India" entitled "Coca-Cola's Scruples" as topics. Plaintiff's prize winning compilation essay entitled "The Continuous Nature of Modern Educational Theory" also went deleted by unknown named agents of Google Inc. and are remediable pursuant to 18 U.S.C. § 1964(c). Plaintiff seeks either their return or actual damages consistent with the value of the racketeered manuscript which is plaintiff's actually deprived protected property right.

C.) Between on or about April 20, 2011 and on or about April 27, 2011 plaintiff checked the Gmail Terms of Service multiple times which, through repeated amendments, steadily conveyed content to the effect of "Google controls the information and the data stored on its network". During this time period the Gmail Terms of Service content was calculated to deceive users like plaintiff into believing defendant's service utilization of accounts like plaintiff's by unknown named agents of Google Inc. was done merely incidental to lawful business practices and done under color of official right. This act of extortion also demonstrates a corrupt course of intentionally misleading conduct undertaken by unknown named agents of Google Inc.

This constitutes the act of extortion and 18 U.S.C. § 1343 Fraud by wire, radio, or television (relating to wire fraud) now perpetrated by Google Inc. defendant's as predicate acts of racketeering activity. 18 U.S.C. § 1512 Tampering conduct expresses continuity throughout defendant's racketeering scheme.

D.) On or about April 27, 2011 complainant first wrote a letter to "Google HQ", 1600 Amphitheatre PKWY, Mountain View, CA 94043 with the intended recipient being the coders' supervisors. Express in plaintiff's letter was a request for the restoration of an honest service and the return of his copyrighted treatise-in-progress which he had noticed vanished (deleted remotely) as alleged in this paragraph on or about March 15, 2011.

This intellectual property injury was suffered as a proximate result of defendant's service utilization of plaintiff's blattimwald@gmail.com account, that is, these injuries were the result of Google's intentional and wanton wiretap violations.

E.) On or about April 27, 2011 plaintiff carbon copied the letter (which he deposited with the United States Postal Service postage prepaid to carry to "Google HQ" on or about the same date) through an online portal. It appeared to plaintiff that this online text portal was received by the same, or same types of, oversight people as his letter was addressed to. It is alleged that this portal was quickly fabricated as merely part of the scheme of unknown named agents of Google Inc. who were actively wiretapping plaintiff on or about April 27, 2011 at the time of plaintiff's first letters transmission and throughout this interaction (April 20 – 27, 2011).

Defendant's illegally intercepted plaintiff continuously throughout this particular interaction incidental to defendant's course of misleading conduct constituting 18 U.S.C. § 1512 Tampering with a victim, witness, or an informant. Plaintiff searched the internet at tremendous length for both a physical Google address as well as some direct generic supervisors of defendant Google Inc.'s coder staff in order to remedy this loss at the time. Instead, plaintiff got corrupt fabrications as part of unknown named agents of Google Inc. engaging in a course of misleading conduct about the recipients of plaintiff's communication on the matter (which was plaintiff's good-faith effort to remedy the matter).

F.) Instead of getting the requested copyrighted treatise-in-progress back, on or about May 9, 2011 two e-mails were replaced in plaintiff's blattimwald@gmail.com account by unknown named agents of Google Inc.. One subject line "Citibank Credit Cards" the other unremembered. Both had been received as a wire communication in 2007 and were replaced in 2011 from some sort of wire communication storage of complainant's blattimwald@gmail.com account archives.

G.) These facts also constitute the formal 18 U.S.C. §1951 Interference with commerce by threats or violence through the use of interstate communications facilities.

H.) The relevant temporality sustains this action inside of the four year 18 U.S.C. 1964 (c) Civil RICO statute announced in Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, (U.S. 1987), which makes this action timely from on or about March 15, 2011, the date plaintiff sourced his injury.

I.) On or about April 23, 2014 plaintiff noticed six pictures that he had taken during his 2005 – 2006 academic year abroad (referenced above) - which had been inexplicably deleted in data storage local and remote to plaintiff - had been returned to plaintiff. It is alleged that on or about May 19, 2011 at least nine pictures were extorted from plaintiff as part of Google Inc.'s racketeering activity inside of this section's predicate acts. Plaintiff newly attributes their conversion from plaintiff's Facebook account and from local to plaintiff's computer to unknown named agents of Google Inc.

Plaintiff is unlawfully deprived of two of these otherwise returned pictures still which were unlawfully accessed and deleted by unknown named agents of Google Inc. both on plaintiff's local hard drive and in his www.facebook.com ("Facebook") account. These acts constitute extortion, criminal law theft, and the civil tort of conversion. Google Inc. defendant's intended to deprive plaintiff of his protected property right in his personal copyrighted photographs permanently. Plaintiff avers it was only because information pertaining to The Racketeering Scheme alleged herein was made to authorities that any of these photographs were returned, demonstrating a truly evil criminal intent and callous and outrageous disregard of plaintiff's rights exhibited by unknown named agents of Google Inc.

Plaintiff remains dispossessed of a photograph of himself in the Irish Pub in the Schwabing District of Munich taken in the 2005-2006 academic year. Plaintiff remains dispossessed of a picture of himself (with others) taken during Carnival in Viktualienmarkt, in Munich, Germany during the 2005-2006 academic year. These conversions caused and this theft causes plaintiff mental anguish and emotional distress. Plaintiff had no idea what happened to them until after he reported this racketeering scheme to federal authorities and his photographs were returned in part. Plaintiff's copyrighted photographs were stolen in a nameless, faceless inside job.

Exhibit "E" demonstrates plaintiff's Facebook photo gallery entitled "James the Globetrotter" as being "updated about 7 months ago" and is a screenshot taken on 11/27/2014. Plaintiff avers "about 7 months ago" from November 27, 2014 plaintiff was in jail and dispossessed of these photographs and therefore this demonstrates an act of wire fraud and computer hacking perpetrated by an unknown named Google agent replacing what he or she had stolen. Sometime after on or about 4/20/2011 this entire Facebook photo album was stolen by extortion and replaced back into plaintiff's Facebook account on or about 4/22/2014. This demonstrates proof of this heinous extortion and constitutes a violation of the Pennsylvania Wiretap law, civil remedy at 18 Pa.C.S. § 5725.

## 14.) The Google-AOL Enterprise with 13th Amendment Violations and 18 U.S.C. § 1343 Wire fraud as Predicate Acts of Racketeering Activity

A.) On account of mostly Google Inc. facilitated (through blattimwald@gmail.com) unseemly e-mail contact to E. Giordano, Esq. of the Northampton County, PA Bench in May and June of 2011, plaintiff was found in violation of CR – 3843 -2010 in Lehigh County, PA and plaintiff was returned to Lehigh County Prison. A "no-contact" order was placed in PA CR-3843-2010 between plaintiff and E. Giordano. This obscenely bulk quantity of allegedly harassing e-mails, spasmodically conveyed to E. Giordano, Esq. in (2009 and) 2011 at up to 50 per hour from blattimwald@gmail.com, were deleted remotely at the carrier from plaintiff's ordinarily accessible Gmail account folders by unknown named agents of Google Inc.. These defendant's deletions were in perpetuating the "non-disclose / delete scheme" occurring continuously throughout these allegations and perpetrated by defendant's.

This obscenely bulk quantity of wire communication sent to E. Giordano, Esq. from blattimwald@gmail.com was deleted by unknown named agents of Google Inc. while plaintiff was imprisoned between on or about June 4, 2011 and on or about September 5, 2011, *that is*, these e-mails were corruptly destroyed, concealed, altered or mutilated from the account

**blattimwald@gmail.com** by Google Inc. defendant's local to the carrier. These remote deletions occurred before plaintiff was released from this term of imprisonment.

B.) Plaintiff considers himself released from his June 2011 prison intake on or about December 12, 2011 to Eagleville Hospital where Norman E. Blatt Jr., while visiting plaintiff on or about December 30, 2011, told plaintiff to ca. "stop e-mailing [him] this filth" and Norman E. Blatt Jr. demonstrated to plaintiff an e-mail sent from **blattimwald@aol.com** to stutsolicitor@yahoo.com , the latter Norman E. Blatt Jr.'s e-mail address. This e-mail had a subject line of "Buy Viagra Online Now" and this e-mail's body was a solicitation to purchase medications for erectile dysfunction online.

The "Buy Viagra Online Now" e-mail from was repeatedly spammed (with a few days' delay in between) out of plaintiff's **blattimwald@aol.com** account until on or about January 20, 2012 to many e-mail addresses which included E. Giordano's and it is averred this e-mail was later amended to include plaintiff's own **blattimwald@gmail.com** account as a recipient (as witnessed once by complainant while complainant was logged into **blattimwald@aol.com** on or about January 18, 2012).

On or about January 18, 2012 plaintiff witnessed this spam e-mail *be caused to be sent* out of his **blattimwald@aol.com** account by an unknown named agent of Google Inc., like to the rest. Plaintiff simply let it happen at this time unaware of this civil action being his remedy as he witnessed it live.

From December 12, 2011 until on or about January 12, 2012 plaintiff had no access to the internet and plaintiff was subject to immediate detainment for any alleged violation of CR-3843-2010 in Lehigh County, PA. The "Buy Viagra Online Now" e-mail persisted for about a week after plaintiff's discharge from Eagleville Hospital and was intended by defendant's to effect such a violation.

In the totality these acts merit the allegation that this was Google-AOL's attempt to hold plaintiff as an involuntary servant. These acts of racketeering activity constitute a violation of plaintiff's 13th Amendment to the United States Constitution in an enterprise directed by unknown named agents of Google Inc. as part of an ongoing 18 U.S.C. § 1343 Wire fraud scheme.

Each spam e-mail constitutes an aggravated Wiretap law violation. This "Buy Viagra Online Now" e-mail was caused to be sent on at least 5 different days. An award of aggravated damages is therefore appropriate.

C.) Google-AOL existed as an enterprise of entities associated in-fact although not in law with direction, distinguishing common features and a concerted aim.

This **blattimwald@aol.com** e-mail had a recipient list containing people complainant had never contacted with his **blattimwald@aol.com** account but had with **blattimwald@gmail.com**. Many of these recipients felt harassed by plaintiff's wire communications dating to plaintiff's tenure as a student at Moravian during the 2008 – 2009 academic year and additional to the formal no-contact order plaintiff had recently received plaintiff also had received do-not-contact letters from at least three of the "Buy Viagra Online Now" e-mail's recipients demonstrating the enterprises aim of having plaintiff immediately detained as a true innocent pending revocation hearings which constitutes defendant Google-AOL's attempt to violate plaintiff's 13th Amendment to the United

States Constitution *at* 18 U.S.C. § 1595 Civil remedy (liability for the *attempt* to violate plaintiff's 13th Amendment at 18 U.S.C. § 1594 General Provisions).

Further enterprise distinguishing characteristics include intentionally doctored contacts' lists in both **blattimwald** accounts from on or about March 1, 2012 throughout the spring of 2012. Then, after plaintiff's reporting of "Shama Medical" on or about April 10, 2012 (alleged hereafter): defendant's not only corruptly altered, mutilated and concealed (from plaintiff) saved contact lists but now also completely destroyed contacts' lists as well as more completely purloined data from both **blattimwald** accounts, at AOL and Gmail. The alias was **blattimwald** at both Gmail and AOL.

Until plaintiff's report of him "Mohammed Aziz Khan", the display name of "Shama Medical" on Gmail, appeared at the top of plaintiff's blattimwald@gmail.com contact list despite plaintiff only consummating one racketeered transaction with this vendor. Also, plaintiff was no longer receiving actual standard e-mail in which his e-mail account was the intended recipient and instead it was being non-disclosed from plaintiff, whose accounts were completely defiant of any semblance of an honest service in either against defendant's duty to provide same. This became manifest to plaintiff on or about April 22, 2014 when plaintiff was able to access his blattimwald@gmail.com account after a period of imprisonment and discovered a surplus of e-mails in his inbox which would have had historical continuity-of-contact over the previous years if plaintiff had in fact been receiving what he was the intended recipient of in his blattimwald@gmail.com and blattimwald@aol.com accounts. Plaintiff's wire communications were being actively illegally intercepted and his transactional records unlawfully accessed throughout these years (ca. December 12, 2011 through on or about April 22, 2014).

It is alleged these acts were committed by unknown named agents of AOL Inc. and unknown named agents of Google Inc. acting in a loosely associated enterprise in fact which plaintiff labels "Google-AOL". Google-AOL existed solely to commit crime at the direction of unknown named agents of Google Inc. The two corporate entities (Google Inc. and AOL) have an existing strategic business relationship and harassing racketeering activity in enterprise became part of their relationship herewith.

D.) The course of conduct alleged is part of a continuous 18 U.S.C. § 1343 Wire fraud scheme and evinces the 13th Amendment violation as part of defendants' intentional and malicious course of criminal conduct. Intending to put a true innocent in jail is the epitome of evil intent, calling for an award of excessive punitive damages for all claims sustained against defendants.

E.) This appears to be the extent of defendant AOL Inc.'s involvement in the Racketeering Scheme as a passive partner in the Google-AOL enterprise-in-fact. Plaintiff's blattimwald@aol.com account was used solely with intent to have plaintiff incarcerated as an illegal involuntary servant.

**15.) 18 U.S.C. § 1512 Tampering with a witness, victim or an informant and 18 U.S.C. § 1343 Wire fraud as Predicate Acts of Racketeering Activity**

A.) Plaintiff made a crimes code report pertaining to the instant civil action to the FBI on or about November 11, 2013. In the first fiscal quarter of 2014 plaintiff handwrote a formulation of The Racketeering Scheme alleged in this civil action to the Federal Communications Commission (hereinafter "FCC") as a consumer complaint. Defendant Google Inc.'s response to plaintiff's

consumer complaint to the FCC is attached as Exhibit "B". Defendant AOL Inc. caused plaintiff's blattimwald@aol.com account to be inaccessible to plaintiff, the account holder. Plaintiff maintained account ownership of blattimwald@gmail.com until on or about May 19, 2014 at which point he requested defendant Google Inc. shut it down in the hopes it would make defendant's pattern of racketeering activity closed-ended in continuity and therewith stop plaintiff from being intentionally harassed, retaliated against and generally wantonly victimized senselessly through wiretaps. No such closure was had with the termination of blattimwald@gmail.com, and no such closure was had despite repeated good-faith efforts to close the pattern, that is to say, kill the scheme by dealing with Google directly, which therefore warrants an award of aggravated damages.

B.) Upon plaintiff's release from imprisonment on or about April 22, 2014 e-mails that were previously non-disclosed from plaintiff appeared in his blattimwald@gmail.com inbox in a deluge. These e-mails were dated from about August of 2013 through on or about April 22, 2014. Their delay in reaching plaintiff's inbox folder constitutes an illegal interception of plaintiff's wire and electronic communications in violation of 18 U.S.C. § 2707 (unlawful access to transactional records) perpetrated by unknown named agents of Google Inc. as a malicious and intentional act.

It is alleged certain e-mails prior to August of 2013 in which plaintiff was the intended recipient were never transmitted to plaintiff's e-mail inbox at blattimwald@gmail.com and were instead directly selected for irrevocable deletion by unknown named agents of Google Inc. who corruptly altered, mutilated, concealed or destroyed them with intent to impair their integrity and availability for use in an official proceeding. This act of tampering occurred as a course of conduct dating to the origins of The Racketeering Scheme, the 2005 – 2006 academic year, alleged above 18 U.S.C. § 1512 Tampering.

C.) Incidental to the course of conduct engaged in by unknown named Google Agents was their knowing efforts targeting plaintiff to be intentionally mislead. Plaintiff was falsely lead to believe defendant's service utilization of blattimwald@gmail.com was legal on account of defendant's act of extortion which thereby prevented and delayed plaintiff's testimony in an official proceeding relating to this civil action, constituting 18 U.S.C. § 1512 Tampering with a witness, victim, or an informant

D.) On or about May 13, 2014 at about 21:00 EST, an unknown named agent of Google Inc. inserted an artificial error into a device driver download at exactly 99% completion three times intending to cause mental anguish and emotional distress to plaintiff and interfere with his lawful livelihood while plaintiff had time to use a free printer and was thus delayed to a point where he was nearly unable to use that free printer in an endeavor aimed at furthering this action and 13-CV-7228 in the Eastern District of Pennsylvania (Philadelphia division) while temporarily at his mother's house (at 630 Hertzog Avenue, Bethlehem, PA 18015) and otherwise homeless. It was known to the unknown named Google agent who perpetrated this act that plaintiff was homeless at this time. Defendant's actions intentionally harassed plaintiff and hindered him from attending an official proceeding as well as reporting commissions of federal offenses to the judicial and executive branches of the United States. This act constitutes 18 U.S.C. § 1512 (d)(1) and (2) Tampering with a witness, victim, or an informant as well as an illegal interception of plaintiff's wire communication *remedy at* 18 Pa.C.S. § 5725.

E.) On or about August 13, 2014 a malicious file or files were installed on plaintiff's computer by unknown named agents of Google Inc. which files, it is averred, caused the software functionality of plaintiff's computer to be nearly crippled. Plaintiff's computer was targeted by defendants for a distributed denial of service attack. Plaintiff alleges this could only be achieved, and in fact was achieved, with Google Inc.'s proprietary software connectivity being utilized for criminal purposes. Unauthorized remote access to plaintiff's computer was gained by unknown named agents of Google Inc. Microsoft Terminal Services, which allows remote desktop functionality, was activated local to plaintiff by defendant to allow and enable their access from afar.

On or about August 14, 2014 plaintiff's Original Equipment Manufacturer (hereinafter "OEM") service partition was unlawfully accessed, and tampered with permanent corrupt amendments that caused plaintiff's mouse to be dysfunctional and make his McAfee firewall contain redundant and alarming entries which indicated systemic computer virus and malware infection of plaintiff's computer.

In the alternative of superseding and replacing hardware drivers, plaintiff alleges another surreptitious installation of an actual computer program or file occurred which caused the Graphical User Interface ("GUI") features of plaintiff's computer software to be deactivated in part and, at times, in whole, system-wide, and suddenly reactivate with a mechanism of sorts to enable and disable the GUI features of plaintiff's computer. The GUI functioned improperly.

On or about August 15, 2014 defendant unknown named agents of Google Inc. *de facto* uninstalled Microsoft Office Starter 2010 from plaintiff's computer. Defendant's caused deactivated and disabled native software functionality local to plaintiff's computer from their remote location. Microsoft Office only appeared correctly installed and would not function and was without the "repair the installation" feature available in a normal install of this software which means the software configuration was manually tampered with by defendant's unknown named agents of Google Inc.

As part of this course of conduct unknown named agents of the common carrier Google Inc. knew complainant had undertaken steps in the courts in an attempt to further this civil action and was possibly working with time constraints and yet sadistically maintained a hindrance to plaintiff's access to the courts. On or about August 20, 2014 plaintiff noticed his personal computer's touchpad to be uninstalled and disabled as part of defendant's reconfiguration of the software which enables the hardware of plaintiff's computer.

F.) On or about August 21, 2014 ca. 01:20 Hrs plaintiff was writing additional information to his www.fbi.gov IC3 report No. I1408161731113602 on this topic-matter. Plaintiff was obstructed and interfered with in that: plaintiff's intended first addition to his IC3 report was lost-in-transmission despite continuous internet access and the FBI website appearing normal until after the "submit" click transaction had completed. Plaintiff alleges the GUI "submit" click transaction was reprogrammed by defendant's unknown named agents of Google Inc. to disconnect plaintiff's computer from his local area network and cause his intended content (desired to be the report's first addition) to be lost before he clicked the (in actuality reprogrammed) "submit" button. An error page appeared in plaintiff's web browser as part of the click transaction which related plaintiff had gone offline. This demonstrates corruptly engaging in intentionally misleading conduct across the web, and through their otherwise lawful online presence, by unknown named agents of Google Inc.

G.) On or about August 22, 2014 plaintiff's computer suffered abnormalities and defects in Google Chrome, Google Inc.'s web-browser. Similar to prior days' wire and electronic communications intercept Google Chrome, despite fresh OEM reinstall from read only memory, closes when a tab is intended to be clicked "open". Plaintiff is also locked out of Google Chrome's menu functions the majority of the time throughout this software tampering of proprietary Google product. These functions are enabled at will via illegal interception of plaintiff's wire and electronic communications, occurring throughout this counts multi-day continuous wiretap violation. Further, this decreased functionality occurs in Microsoft internet explorer as well, a wiretap interference plaintiff can't escape on his personal computer which has networking connectivity.

H.) On or about August 25, 2014 complainant physically unplugged the internet at 630 Hertzog Ave., Bethlehem, PA 18015 (his current mailing address) where he was attempting to use the internet. While complainant was typing 13-CV-7228 unplugged and offline the connectivity installed and-or enabled previous to this day by defendant's was activated (and-or awakened) remotely by unknown named agents of Google Inc., who, it is alleged, accessed plaintiff's computer through something like a neighbor's internet connection while plaintiff's wireless network card remained installed, enabled, and connected to a Wireless Fidelity (Wi-Fi") Local Area Network ( "LAN"). Plaintiff had physically unplugged the house's internet connection and notwithstanding connectivity to his computer was established else wise. It was on or about this day, August 25, 2014, that plaintiff realized this was a surreptitious installation of a "Trojan-type" program along with remote desktop service access through terminal services. Microsoft Office, which plaintiff had reinstalled since its complete deactivation and disabling from its GUI alleged above, was caused to be crashed while plaintiff was typing by unknown named agents of Google Inc. This crash could only have happened in this manner. Plaintiff was unplugged, and offline. This is the most unique event in this series and shockingly criminal, warranting an award of aggravated damages. Exhibit "C" demonstrates unlawful remote access to plaintiff's computer by defendant's, occurring after he physically plugged the internet back in to the network on that day.

Between On or about September 5, 2014, and on or about September 7, 2014 and September 8, 2014 plaintiff labored over how to fix his personal computer, and ultimately freshly reinstalled Windows 7 Home Premium x64, Microsoft Office Starter 2010 and his hardware's drivers downloaded from the OEM. This culminated in plaintiff re-installing Google Chrome which immediately functioned as alleged above (that is, defectively), constituting illegal interceptions of plaintiff's wire communications.

The computer-crippling functions of the surreptitious program ceased on or about September 8, 2014 and the interception and movement of plaintiff's cursor location through his wire and electronic communications increased. On or about September 8, 2014 as plaintiff typed this civil action about 15:00 Hrs an unknown named Agent of Google Inc. maliciously and intentionally caused plaintiff's cursor to again be placed behind his progressing text and placed plaintiff's cursor into sentences already written. This occurred repeatedly also on September 9, 10, 11, 12, and 13, 2014 where plaintiff's cursor was placed behind text being written and into text already written. As of on or about September 14, and 15, 2014 at times the cursor is placed forward into text already written. This was caused either personally by a defendant or through defendant's software tampering of plaintiff's local computer (that is, a reconfiguration of its software configuration).

I.) On or about September 12, 2014 plaintiff was disconnected from his Wi-Fi LAN and notwithstanding his computer was surreptitiously accessed and his cursor moved into text already typed behind his progressing sentences.

In the alternative to this happening incidental to real time illegal interceptions plaintiff avers a program was installed on his local computer from defendant Google Inc.'s remote location causing this interference, which obstructed and impeded plaintiff's every use of his computer due to the frequency of defendant's remote digital interferences with plaintiff's local computer activities on his computer.

J.) These acts were designed to intentionally harass, annoy and alarm plaintiff, and delay or prevent his attendance or testimony at an official proceeding which he was retaliated against for instituting. Plaintiff's lawful livelihood was being interfered with grossly.

This course of intentionally harassing conduct caused plaintiff intense mental anguish and emotional distress as a direct and proximate result of its effect of delaying and hindering court, the services of which plaintiff was actively accessing or intending to access throughout defendant's course of conduct in this count. 18 U.S.C. § 1512 Tampering and 18 U.S.C. § 1513 Retaliation with a victim, witness, or an informant are the predicate acts of racketeering activity which accompany 18 U.S.C. § 1343 Wire Fraud.

**16.) 18 U.S.C. § 1513 Retaliation against witness, victim or an informant and 18 U.S.C. § 1343 Wire fraud as Predicate Acts of Racketeering Activity**

A.) On or about May 19, 2012 plaintiff's Windows Operating System GUI had choices removed from display until plaintiff was running essentially Winamp, notepad, ventrilo and Counter-Strike as programs on his personal Windows computer. Around this time plaintiff's computer also had a notice of a hard-drive failure artificially inserted intended to hasten the demise of his computer, a damage to plaintiff's tangible property (plaintiff's laptop computer).

In late June of 2012 plaintiff's personal computer was accessed remotely without authorization ("hacked") through an internet firewall which was only allowing Mozilla Firefox and Google Branded Software through. During this active wiretap hacking of plaintiff text was inserted into, and removed from, plaintiff's computer files remotely by unknown named agents of Google Inc., damaging plaintiff's tangible property (plaintiff's laptop computer).

Like to these 2012 events, unknown named agents of Google Inc. knowingly used their otherwise lawful web presence to hack plaintiff's personal computer occurring on or about May 1, 2014. *During all surreptitious entry of plaintiff's computer by these defendant's*: core system files and software files were corruptly altered, destroyed or mutilated on plaintiff's computer intending to impede his machine's functionality. Files might simply have been concealed from the computer by their being rendered inoperable to the computer service calling on them despite remaining in storage locally. Defendant's knowing conduct has damaged plaintiff's tangible property with intent to retaliate against plaintiff for his provision to civil authorities of information relating to the commission of federal offenses. This course of conduct constitutes 18 U.S.C. § 1513 Retaliating against a victim, witness, or an informant and has resulted in a $500.00 USD concrete financial loss to plaintiff – the out-of-pocket cost of plaintiff's (ultimately destroyed) upon

purchase. On or about November 13, 2014 plaintiff's personal laptop computer was *de facto* destroyed by unknown named agents of Google Inc. as part of their wire fraud scheme and retaliation against plaintiff, constituting also a Pennsylvania Wiretap law violation 18 Pa.C.S. § 5725.

B.) On or about May 5, 2014 pictures plaintiff had recently taken with his iPhone were altered and texturized from a remote location while stored in plaintiff's iPhone locally as intangible copyrighted property. It is alleged these changes were made by unknown named Google agents who intended to make them look fake and artificial. It is alleged that this only occurred in retaliation for plaintiff's provision to law enforcement of information pertaining to the Racketeering Scheme alleged herein. These acts interfered with plaintiff's lawful livelihood in online social media use and constitute 18 U.S.C. § 1513 Retaliation.

On or about May 5, 2014 plaintiff's iPhone was continuously plugged in for over 40 minutes and started charging around 5%, peaked at 24%, and while plaintiff watched: his iPhone regressed to 21% and after making direct complaint to unknown named agents of Google Inc. also via illegal wire and electronic communications interception plaintiff's iPhone suddenly spiked to 33%. These differences occurred over few minutes, and damaged plaintiff's tangible property beyond repair, his ca. $299.00 iPhone.

On or about May 13, 2014 plaintiff's iPhone ceased to charge despite being continuously plugged-in and also on this date while plaintiff used Grindr, which is a social media application for smart phones, plaintiff was shown the Global Positioning System ("GPS") location on iPhone's map software of the users he was chatting with through remote manipulation of the phone's and application's software by an unknown named agent of Google Inc.. Reckless and outrageous disregard of privacy and anonymity of Grindr users was exhibited by this flagrant and intentional wiretap act, warranting an excessive punitive damage for this truly invasive criminal act perpetrated by an unknown named agent of Google Inc. This act of showing plaintiff his online contacts GPS position also warrants an award of aggravated damages.

Plaintiff's iPhone GPS and correspondent iPhone map positioning were sporadically tampered with by unknown named agents of Google Inc., in April, May and June of 2014, taking complainant on involuntary journey's in unfamiliar areas of Allentown, PA. Plaintiff's iPhone displayed the wrong compass direction which misdirected and misled plaintiff knowingly and willfully as part of defendant's scheme to retaliate against plaintiff, and as part of an attempt to violate plaintiff's 13th Amendment (liability for the attempt at 18 U.S.C. § 1594 General Provisions).

These acts only occurred as part of defendant Google Inc.'s response to plaintiff's provision of information to United States law enforcement and therefore this course of conduct constitutes 18 U.S.C. § 1513 Retaliating against a victim, witness, or an informant, and clearly evince plaintiff's concrete financial loss to the scheme.

C.) On or about April 23, 2014 and as a direct and proximate result of the insider wire and electronic communications access of defendant Google Inc. and its agents plaintiff was interfered with, and obstructed in, the typing of 13-CV-7228's restatement by having his copy cache get deleted locally from defendant's remote location while plaintiff was on a Bethlehem Area Public Library computer. Regardless of the disposition of 13-CV-7228 in the Eastern District of Pennsylvania, this

malicious and intentional act of deletion attributes liability to the unknown named Google Inc. agent who perpetrated it. 18 U.S.C. § 1513 Retaliation.

This copy cache contained plaintiff's sole copy of a well formulated fixed form of expression of the material facts of April 19, 2009, which is tough for plaintiff to rewrite as it requires him to remember a period of time plaintiff was held to what plaintiff contends United States law defines as a mental torture and a continuous illegal forced labor violation (that 13th Amendment violation alleged in count 11). These memories cause plaintiff intense mental anguish and emotional distress upon recollection, and interfere with plaintiff's lawful livelihood.

**17.) Conclusion: Conduct Constituting a Pattern of Racketeering Activity**

A.) It has been demonstrated by the allegations of The Racketeering Scheme that the primary predicate act of racketeering activity constituting one-half of Google Inc.'s pattern of racketeering activity throughout is 18 U.S.C. § 1343 Wire Fraud. The other-half is demonstrated by defendant's specific activity while committing wire fraud. Within The Racketeering Scheme the second predicate act of racketeering activity consists of, 13th Amendment violations, the act of extortion, 18 U.S.C. §1951 Interference with commerce by threats or violence, 18 U.S.C. § 1513 Retaliation against a victim, witness, or an informant, 18 U.S.C. § 1952 (a) Racketeering, and 18 U.S.C. § 1512 Tampering with a victim, witness, or an informant. Defendant's pattern of racketeering activity is comprised of the foregoing seven (7) predicate intentional acts of racketeering activity.

Throughout the allegations of this civil action defendant's course of conduct expresses continuity plus pattern and injury. This pattern of racketeering activity is open-ended in continuity and projects the real threat of plaintiff being the continued victim of Google Inc.'s purposeful and targeted predicate acts of racketeering activity. Defendant's innovated RICO for the digital environment they have to racketeer in and defendant's activities severely disrupts plaintiff's wire and electronic communications transmissions. Plaintiff suffers the duress of never knowing whether a piece of technology he owns will function correctly and not be hacked or otherwise interfered or tampered with in the future in its software and hardware configuration (i.e. remote hardware destruction...et.al. alleged hereafter).

## IV Supplemental State Law Claims

**18.) 18 Pa.C.S. §5725 Civil action for unlawful interception, disclosure or use of wire, electronic or oral communication**

A.) At all times throughout The Racketeering Scheme violations of 18 PA C.S. § 5725 were perpetrated by defendant's while plaintiff exhibited an objective and reasonable expectation of privacy in his wire and electronic communications. Against their duty named defendant's knowingly and willfully interfered with plaintiff's wire and electronic communications in a wanton manner. According to 18 PA C.S. § 5725 (a) plaintiff's bringing a successful cause of action shall be entitled to liquidated damages of $100 a day for each day of violation or $1,000 (whichever is higher) accruing to the actual damage and shall be entitled to recover punitive damages.

B.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

C.) On or about April 10, 2012, while attempting to arrange another buy of controlled substances with "Shama Medical" plaintiff wrote "that guy knew where bin Laden was why are you bothering me" to defendant unknown named agent of Google Inc. who was repeatedly placing plaintiff's cursor behind plaintiff's progressing text into sentences already written behind its intended positioning.

On or about April 22, 2014 plaintiff was discharged from imprisonment and upon turning on his iPhone that day found that Bob Dylan – Tangled up in Blue had been uploaded to his mpeg layer 3 (".mp3") playlist remotely by an unknown named agent of Google Inc., without plaintiff having known legal license to digitally possess this or any of the hereafter enumerated music. The Kinks – Lola also appeared as an .mp3 uploaded remotely to plaintiff's iPhone on or about April 22, 2014 by unknown named agents of Google Inc. in an intentional, knowing and willful malicious illegal interception of plaintiff's wire and electronic communications.

Following these uploads, Bob Dylan – The Gates of Eden, a rare alternate of Bob Dylan – Who Killed Davey Moore, Bob Dylan – Last thought on Woodie Guthrie, and Bob Dylan – Talking John Birch Paranoid Blues all appeared in complainant's iPhone's .mp3 library, occurring on or about May 19, 2014 and it is alleged these songs were uploaded by unknown named agents of Google Inc..

The attached Exhibit "D" displays that on or about September 4, 2014 iPhone Places (which records the location of pictures taken by the iPhone's on-board camera) continued to display since on or about June 20, 2014 a photo created just off the western coast of Africa, a location plaintiff avers he's never been to. This display could only be achieved by the ability to manipulate plaintiff's iPhone's software, and this display was in-fact achieved by unknown named agents of Google Inc. by and through a malicious and intentional illegal interception of plaintiff's wire and electronic communications. Plaintiff had no part in making this iPhone Places display happen: it was created by defendant's.

On or about July 18, 20, and 22, 2014 plaintiff's Global Positioning System (hereinafter "GPS") was terminated from view from plaintiff's iPhone software and hardware configuration. Plaintiff's iPhone was tampered with remotely in that GPS tracking was deactivated, disabled, and unable to be configured locally on the iPhone. GPS configuration vanished from plaintiff's iPhone. This was caused by unknown named agents of Google Inc.

On or about September 30, 2014, October 01, 2014, October 6, 2014, October 18, 2014, November 28, 2014 and December 16, 2014 plaintiff's HTC One Smartphone was switched into a "permanent flight mode". That is, plaintiff's HTC One cellular reception was disabled from remotely at carrier Google Inc. by an unknown named agent of Google Inc. and electronic reception was unable to be reactivated without restarting the smartphone's Android Operating System. This constitutes a malicious, illegal interception of plaintiff's wire and electronic communications transmissions.

On or about November 24, 2014 plaintiff's HTC One cell-phone ceased charging at 99%. It would not charge to 100%. This was caused by an illegal interception of plaintiff's electronic and wire communications signals and effected by an unknown named agent of Google Inc.

On or about September 16, 2014 plaintiff's HTC One cell-phone was charging erratically. It ceased charging at 13% and displayed an error that the connection was not securely fastened for charging

purposes, although plaintiff avers it was in-fact securely fastened. Plaintiff's HTC One smartphone would not progress past 13% and would not drop below 13% and this despite continuous charging and displaying this error over the course of perhaps 7 minutes. After plaintiff restarted his phone multiple times his HTC One was allowed by the unknown named agent of Google Inc. manipulating its software and hardware configuration to charge normally, constituting a malicious illegal interception of plaintiff's wire and electronic communications transmissions. These allegations evince permanent damage in the hardware and software configuration of Plaintiff's tangible property, a $599.99 USD compensatory damage accruing to the actual loss (the cost of plaintiff's HTC One Cell Phone).

On or about October 8, 2014 while [Microsoft] Windows Wireless Service was disabled: connectivity was established by unknown named agents of Google Inc. over plaintiff's wireless Local Area Network adapter constituting a malicious, illegal interception of plaintiff's wire and electronic communications transmissions on plaintiff's personal laptop computer, a $500.00 damage accruing to the actual loss (the cost to plaintiff to acquire his destroyed laptop).

Between on or about October 23, 2014 and October 29, 2014 plaintiff's personal laptop computer was rendered inoperable locally. Plaintiff's laptop simply did not function as designed and this was caused by a denial of service attack through an illegal interception of plaintiff's wire and electronic communication signals by an unknown named agent of Google Inc.

On or about November 29, 2014 plaintiff intended to submit to a www.cia.gov web portal[1] a submission seeking government assistance in prosecuting this civil action because the www.fbi.gov website was blatantly wiretapped. Plaintiff avers the United States government has a damage he believes should be litigated on principle. Plaintiff's text was denied transmission by an unknown named agent of Google Inc. who caused plaintiff's intended submission to be deleted from the text portal with an error and a refreshed website (at the cited uniform resource locator "URL") that stated there was no entry entered in the message field. This occurred again on December 16, 2014 despite plaintiff's web connectivity and repeated attempts at submitting this paragraph near-verbatim to suggest the United States government litigate its wiretap damage. Plaintiff has a good faith belief this was caused by an unknown named agent of Google Inc. and not an agent of the United States government.

D.) Google Agents' Racketeering Scheme demonstrates an open-ended pattern of racketeering activity with threat of repetition due to agents of Google Inc., AOL Inc,. and those supervisors negligent to this ongoing scheme having and maintaining omnipresent access to wire and electronic communications transmissions inside of the carriers' normal course and scope of operations.

As a direct and proximate result of these allegations plaintiff evinces the need for damages to include an offline, completely unplugged computer to counter this real threat of repetition as defendant's AOL Inc. and Google Inc. will plausibly still have in their employ the actual agents who perpetrated this scheme distant into the future who will likely repeat this racketeering activity at some point in the future solely because they can (as that is why they did it to begin with).

[1] www.cia.gov/cgi-bin/comment_form.cgi

Plaintiff avers he has no privacy on any computer with modern networking capabilities as a direct and proximate result of the racketeering activities of unknown named agents of Google Inc. Plaintiff avers will always fear being actively illegally intercepted in violation of 18 PA C.S. § 5725 in his wire and electronic communications by unknown named agents of Google Inc.. Plaintiff remedies not knowing whether or not his technology will function as designed with an offline and unplugged computer. This damage is evinced throughout the allegations of this complaint.

Defendant's status and skillset as nameless, faceless and unknown agents of common carrier's demonstrates an absolute inability to end a digital pattern of racketeering activity perpetrated by a carrier by simply "getting away from the perpetrators" who (here) are omnipresent in their online presence and reach through their otherwise legitimate web-presence.

An offline computer for plaintiff's life costs $5,000 USD. Plaintiff's damaged technology totals the sum of $1,398 USD. Actual liquidated damages consistent with statutory provisions total $5,000 USD over 50 days continuous wiretap violations per these allegations. Taking into account the evil intent in the racketeering scheme, beyond mere crime, plaintiff evinces a truly excessive punitive ratio is in order to punish, deter and provide admonition to the extremely wealthy Google. Therefore the actual damage is $11,398 USD with a punitive ratio of 200-1, or $2,279,600 USD for a grand total recovery of $2,290,998 USD for the wiretap law cause of action.

**19.) Common Law Fraud / Tort of Non-Disclosure**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) The "Google Core-Values" on or about April 23, 2011 stated ca. "Google protects user data" and "only the user has access to his own data" which were published at the time Google's Terms of Service were published to extort plaintiff.

The "Google Core Values" general content conveyed that only the account holder has the access necessary for this course of conduct to occur. Plaintiff had cause to check for both Google's Terms of Service and Google's Core Values at the time in question. The knowing display by unknown named agents of Google Inc. of the Google Core Values at a time the veracity of these core values was known to be untrue constitutes common law fraud. Defendant's had intent to deceive plaintiff about the truth behind their service utilization of his blattimwald@gmail.com account. Plaintiff relied on these core values to his detriment – the loss of his protected property right – that is, the loss of plaintiff's copyrighted images and fixed forms of written expression - to the defendant's scheme to remotely non-disclose and delete plaintiff's e-mails. This common-law fraud was undertaken by these defendant's in callous and outrageous disregard of plaintiff's rights and this complaint *in toto* demonstrate the victimizing of an innocent person solely because defendant's could, by and through conduct constituting crime. In other words, conduct undertaken with truly evil intent – calling for an excessive punitive ratio for all claims made against defendant's. This claim values the recovery for plaintiff's extorted copyrighted writing.

C.) Actual and punitive damages in an amount to be determined at trial.

**20.) Tortious Interference**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) In the formation of the Google-AOL enterprise plaintiff alleges an unknown named agent of Google Inc. induced an unknown named agent of AOL Inc. on or about December 1, 2011 to service utilize plaintiff's blattimwald@aol.com e-mail account. This inducement was made by the Google agent who had knowledge of this other blattimwald e-mail alias and its enterprise distinguishing value to attempt their aim. The Google Inc. actor induced use of blattimwald@aol.com for defendant's newly formed racketeering enterprise targeting plaintiff. This was done without plaintiff's consent. These events occurred against defendant's duty to provide an honest service and against plaintiff's contractual relationship with AOL Inc., which actions deserve recognition as clear negligence on the part of these carrier's agents.

C.) Nominal damages attribute to this tort.

**21.)   Harassment**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) In alternating messages of e-mails of containing text sent to and from blattimwald@gmail.com in May of 2011 and again in late April and early May of 2012 the color of the text was changed from black to dark metallic blue and from black to dark grey (in alternating e-mails) at a time unknown named agents of Google Inc. knew complainant was suffering from a mind burning itself out on the very stimulant-based narcotics which they facilitated plaintiff's acquisition of within defendant's course of intentionally harassing and allowing harassing conduct constituting defendant's liability for brain damage, warranting an excessive punitive ratio for all actual money damage claims set-forth in this complaint.

C.) As a direct and proximate result of the illegal interception of plaintiff's wire and electronic communications in 2014 plaintiff was unable to look down at handwriting in order to be able to reproduce it in type simultaneously, a skillset plaintiff possesses. Unknown named agents of Google Inc.'s causing of plaintiff's cursor to be displaced in his digital papers has caused plaintiff's eyes to hurt and be severely strained (on and off the computer) due to needing to snap up and down quickly (switching between checking for the cursor's location and memorizing a few words) which is the only way to ensure coherent text when confronted with this kind of intentionally harassing conduct. Plaintiff remains dispossessed of photographs," which annoys him too.

D.) $25,000 USD compensatory damage with a punitive ratio of 140-1, or $3,500,000 USD for a grand total recovery of $3,500,025 USD for harassment.

**22.)   Conversion**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) The photographs stolen from plaintiff cause mental anguish and emotional distress to plaintiff who was victimized as a true innocent in all matters of theft and conversion of his intellectual property at the hands of the malicious and intentional acts of unknown named agents of Google Inc. Plaintiff suffered the theft of these digital images which commands compensatory and

punitive damages taking into account defendant's criminal conduct, criminal intent and deliberate disregard of plaintiff's rights. Plaintiff's photographs of himself at 17 and 18 years of age are irreplaceable and therefore this is an irreparable damage. The location abroad can be visited to the season of year again, constituting the actual compensatory damage for this tort.

C.) The cost to replace these two photographs as nearly as may be is $6,250 USD actual damage with a 200-1 punitive damage ratio, or $1,250,000 USD, for a grand total recovery of $1,256,250 USD for conversion.

**23.) Negligence in the Provision of Wire and Electronic Communications**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

These allegations envelope defendant's racketeering scheme which occurred over a substantial period of time in deliberate disregard of defendant's duty to provide an honest service with respect to their provision of wire and electronic communication services to plaintiff, causing injury.

As a direct and proximate result of allowing "Shama Medical" to operate over a substantial period of time plaintiff demonstrates defendant Google Inc. and its agents had actual knowledge of "Shama Medical" and his business dealings, which strictly encompassed controlled substances distribution. Unknown named agents of Google Inc. knowingly facilitated plaintiff's 2009 purchase of methylphenidate (a schedule two controlled substance) from this narcotics vendor directly. This event also occurred inside of defendant's preexisting course of conduct constituting both Wire Fraud and a Pennsylvania Wiretap Violation. Without defendant's negligent acts there would not have been illicit drugs for plaintiff to ingest, which require protracted professional treatment.

Plaintiff's purchases through www.bulkresearchchemicals.com in 2012 (Exhibit "A") were entirely insufflated and likewise unlawfully facilitated as a direct and proximate result of defendant's negligence. Plaintiff attempted to consummate a second transaction with Shama Medical around the time of the purchases demonstrated by Exhibit "A".These acts contributed to plaintiff's out-of-control substance addiction which required and requires professional treatment and rehabilitation to recover from constituting actual negligence damages. The ingestion of this controlled substance caused plaintiff brain injury and prematurely aged him.

Actual and punitive damages accrue to defendant's negligence in an amount to be determined at trial.

**24.) Supervisory Negligence in the Provision of Wire and Electronic Communications**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) Plaintiff first wrote Mr. Sergey M. Brin, defendant, on or about January 10, 2014 from imprisonment. Plaintiff's letter was addressed to the Googleplex address listed in this complaint. Plaintiff expressed his dissatisfaction with the Google Services he had been receiving in blattimwald@gmail.com and it is alleged defendant Brin, a co-founder of Google Inc., or his office staff, directly received and heeded plaintiff's letters prior to on or about April 22, 2014 and notwithstanding the extraordinary content of plaintiff's personal complaint to him defendant Brin

negligently allowed the racketeering scheme to persist against his duty to provide an honest service.

C.) Plaintiff alleges Google Inc. CEO Lawrence Page, a co-founder of Google Inc., was made aware of this racketeering activity being perpetrated by agents of his company by Mr. Sergey Brin, defendant. Someone in the chain of command on his staff informed defendant Page's people of plaintiff's claim. This occurred before plaintiff's April 22, 2014 release from imprisonment and probably even before plaintiff's first handwritten consumer complaint to the FCC. Notwithstanding defendant Lawrence Page negligently allowed his company's racketeering scheme targeting plaintiff to persist against defendant's duty to provide an honest service.

D.) The theory of liability for negligent supervision rests on respondeat-superior as at all times relevant to the events alleged in this civil action named defendants were in and maintained a supervisory capacity over the day-to-day operations of defendant Google Inc. These top supervisors have exhibited assent to the acts of the racketeering scheme and therefore any award of damages directly attributes to defendant Google Inc. as the liable person.

E.) Nominal damages accrue to this claim of negligent supervision. Punitive damages are assessed herewith against defendant Google Inc..

**25.) Intentional Infliction of Emotional Distress / Mental Anguish and Emotional Trauma / Pain and Suffering**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) Plaintiff asserts mental anguish and emotional distress / pain and suffering occurred as a direct and proximate result of the Pennsylvania Wiretap Violation alleged above.

Plaintiff avers that as a direct and proximate result of defendant's scheme he feels victimized and at times beholden to the anxiety that he is targeted for crime, never knowing when the next interference with or obstruction of his wire and electronic communications will occur.

Google Inc. as a proximate result of its wiretap violations facilitated plaintiff's physical injury of brain damage, eye strain and premature aging. Eye strain occurred due to placement of plaintiff's cursor at a point in his text other than where plaintiff intended the cursor to be at.

C.) $25,000 USD compensatory damage with a punitive ratio of 100-1, or $2,500,000 USD for a grand total recovery of $2,500,025 USD for mental anguish and emotional trauma / IIED.

## V Federal Claims For Relief

**26.) 18 U.S.C. § 1964 (c) Civil RICO**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) Plaintiff suffered injury to his tangible property in the sum of $1,398 USD, and to his intangible copyrighted property [specifically his photographs] in the sum of $6,250 USD. The value of plaintiff's writing is to be determined at trial by jury. Treble damages of this claim provide for the recovery of at least $20,148 USD.

**27.) 18 U.S.C. § 2707 Civil Action (Unauthorized Access to Transactional Records)**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) On or about April 22, 2014 there was an active wiretap deletion of an e-mail from blattimwald@gmail.com. This act was committed by an unknown named agent of Google Inc. in an intentional and malicious wiretap violation. Plaintiff watched live as this e-mail disappeared from a Bethlehem Area Public Library computer on Tue, Apr 22, 2014 where it was displayed as being listed-as-normal in his blattimwald@gmail.com account prior to its deletion by defendant.

C.) Plaintiff seeks compensatory and punitive damages for his injuries consistent with statutory provisions, that is, $1,000 USD actual damages and a 200-1 punitive ratio, or $200,000 USD, for a grand total recovery of $201,000 USD for unauthorized access to transactional records.

**28.) 18 U.S.C. § 1595 Civil remedy,**

A.) Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

B.) 18 U.S.C. § 1595 Civil remedy provides for an award of damages to any person who is subject to a violation of the 13th Amendment who makes claim inside of the 10 year statute of limitations applicable to 13th Amendment violations.

C.) Plaintiff seeks an award of damages consistent with 18 U.S.C. § 1593 Mandatory restitution. Plaintiff avers he worked on this civil action for approximately forty (40) hours which is a compensable labor and was necessary to remedy his 13th Amendment violation. Plaintiff avers his labor is compensable at $10.00 / hr for research and writing necessary to perfect this complaint.

D.) Plaintiff avers the specific remedy of a Google Nexus 5 Smartphone in an LG Matte Black case are a reasonable compensatory damage for this claim, in addition to $400.00 USD, as total recovery for this cause of action.

## VI Conclusion

**29.)**

A.) The controlled substances defendant Google Inc. facilitated plaintiff's acquisition of from abroad (England and Pakistan) fueled plaintiff's out of control substance addiction from 2009 – July of 2012. Plaintiff's abuse of these controlled substances caused and exacerbated brain injury in plaintiff as well as caused premature aging, constituting physical injury. These acts allow for an excessive punitive ratio. The scheme of unknown named agents of Google Inc. contains shocking, extremely criminal acts which plaintiff alleges could only be achieved with this common carrier's proprietary software connectivity being utilized for criminal purposes which calls for an award of an excessive punitive ratio to deter future wrongdoing. Plaintiff avers punitive and aggravated

damages that take into consideration defendant's extreme wealth and what would constitute a meaningful punitive damage with respect thereto would total in excess of $10,000,000 USD recovery for these allegations.

## VII Prayer for Relief

30.) A.) Aggravated damages in the amount of $1,000,000 USD

B.) Nominal, Compensatory and punitive damages in an amount to be determined at trial by jury unless otherwise specified. $10,768,825.00 USD is specified thus far in the aggregate for recovery.

C.) Complainant prays the Court request counsel pursuant to 28 U.S.C. §1915(e)(1) in the interests of justice. Complainant alleges that normally allegations of crime are rightly prosecuted by a district attorney. Which is a luxury complainant doesn't have with his purely federal private civil RICO claim. Further, plaintiff avers the public good is served by counsel adroitly avenging these allegations. Plaintiff has no prior litigation experience (he's never summonsed anybody before[2]).

D.) Any and all other relief as the Court deems just and proper.

Respectfully Submitted,

Dated: December 17, 2014 JAB

/s/ James A. Blatt

James A. Blatt
630 Hertzog Avenue
Bethlehem, PA 18015

+1 (610) 657 – 4672
JamesBlatt5@gmail.com

I declare under penalty of perjury that the foregoing (pages 1 - 25 ) is true and correct to the best of my knowledge, belief and information.

/s/ James A. Blatt Executed: December 17, 2014 JAB

[2] Summonses are enclosed with this complaint for all captioned defendants.



Exhibit "A"

Home>My account>Order history

# Order history

Here are the orders you have placed since the creation of your account.

| Order | Date | Total price | Payment | Status | Invoice | |
|---|---|---|---|---|---|---|
| #009786 | 04/20/2012 | £35.00 | SecureTrading STPP Payment Pag | Shipped | — | detailsReorder |
| #009025 | 03/8/2012 | £39.53 | Western Union | Canceled | — | detailsReorder |
| #008406 | 02/5/2012 | £72.08 | Western Union | Shipped | — | detailsReorder |

- Back to Your Account

Bulkresearchchems became Megachems

Exhibit "A"



Exhibit "B"

1600 Amphitheatre Parkway
Mountain View, California 94043

Tel: 650.253.0000
Fax: 650.253.0001
www.google.com

June 25, 2014

RECEIVED
JUN 30 2014
Office of Attorney General
Scranton Regional Office

John. J. Dunn
Bureau of Consumer Protection
Scranton Office
417 Lackawanna Avenue, Suite 202
Scranton, PA 18503

Re: James A. Blatt
File No. BCP-14-05-019265

Dear Mr. Dunn,

Google Inc. ("Google") writes in response to your letter dated June 3, 2014.

Unfortunately, Mr. Blatt's complaint is indecipherable. In order to investigate this matter further, we will need Mr. Blatt to clearly explain his claim.

Thank you for your time and attention.

Sincerely,

Keren Vanisi
Litigation Legal Assistant

Exhibit "B"



Exhibit "B"

Google Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043

Main 650 253.0000
Fax 650 253.0001
www.google.com

May 1, 2014

*Via CCMS*

Federal Communications Commission
Consumer and Governmental Affairs Bureau
Consumer Inquiries and Complaints Division

**Re: Complaint No. 14-C00570288 (James A. Blatt)**

To Whom It May Concern:

We have received a complaint filed with the Federal Communications Commission by James A. Blatt regarding difficulties he has been experiencing with his Gmail account.

If Mr. Blatt would like to download a free copy of his Gmail messages and other data, he should follow the Google Takeout instructions available at https://www.google.com/settings/takeout. If Mr. Blatt would like to cancel his Gmail address, he should follow the instructions available at https://support.google.com/accounts/answer/61177?hl=en. Finally, if Mr. Blatt would like to delete his entire Google account, he should follow the instructions available at https://support.google.com/accounts/answer/32046?hl=[illegible].

Please note that Gmail is an information service not subject to the Commission's jurisdiction and Mr. Blatt's complaint does not appear to implicate any Commission rules. Accordingly, this response is being filed using the Consumer Complaint Management System's Electronic Complaint and Response process as a courtesy to the Commission and Mr. Blatt.

Respectfully submitted,

*Google Inc.*

cc: James A. Blatt (via regular mail)

Exhibit "B"

</Events>



Exhibit "D"

9:55 AM
17%
Places
One photo
North America
Africa
Albums
Places

Plaintiff retains the original color screenshot demonstrating the coastlines clearly.

Exhibit "D"



Photographs - Google D
James A. Blatt
www.facebook.com
James A. Blatt
James
Home
Find Friends
James the Globetrotter
Chat (8)
Neatly.Unshaven.22.jpg
Saratoga.Race.Course.jpg
Show all downloads...
Exhibit "E"
→Plaintiff retains the original color
Screenshot with all text sharply defined
therein.
Exhibit "E"

James A. Blatt
630 Hertzog Avenue
Bethlehem, PA 18015

December 17, 2014

Clerk of Courts
Pro-se division
504 Hamilton St.
Allentown, PA 18101

Dear Clerk,

Enclosed please find my pro-se complaint and its exhibits stapled together as well as service of process for all named defendants. The Eastern District of Pennsylvania Civil Cover Sheet follows this page. I hope you find it complete.

Sincerely,

Dated: December 17, 2014

James A. Blatt

James A. Blatt
+1 (610) 657 – 4672
JamesBlatt5@gmail.com